IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALEX EXPRESS, INC., | : | No. 3:03cv886 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| BANK OF AMERICA, US BANK NATIONAL ASSOCIATION, and LUMBERMEN'S MUTUAL INSURANCE CO., | : | |
| Defendants | : | |
| v. | : | |
| | : | |
| OWNER'S EXPRESS GROUP | : | |
| Third Party Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Presently before the Court for disposition are Defendant U.S. Bank National Association's ("U.S. Bank") Motion For Summary Judgment and Defendant Lumbermen's Mutual Insurance Company's ("Lumbermen") Motion for Summary Judgment. The parties have fully briefed the motions and they are ripe for summary judgment. For the following reasons, we will grant both motions.

I.   **Background Facts**

The background facts are undisputed. Plaintiff Calex Express, Inc., ("Calex") provides transportation and carrier services. (Pl. Stat. Facts in Opp. U.S. Bank Mot. Summ J. Ex. ("Exhibit") A 8). In November 2000, Calex subcontracted with Third Party Defendant Owners Express, Inc. ("Owners") to ship cargo freight for Toys 'R Us, Inc. (Id. at 16-19).

On November 9, 2000, the cargo freight was lost or stolen while in Owners' possession. (Id. at 16-17). Owners had a policy covering the loss with Lumbermen. (Def. Ex. B. In Supp. Summ. J.) Included in this policy was an endorsement, which provided in part, "In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, within the limits of liability hereinafter provided, any shipper of consignee for all loss of or damage to all property belonging to such shipper or consignee." (Id.)

Pursuant to the policy, on February 20, 2001, Lumbermen issued a check for $150,000 jointly payable to Owners and Toys 'R Us and drawn from an account with Defendant Bank of America. (Exhibit B, "the check") On February 22, Owners presented the check endorsed by Owners and Toys 'R Us to Firstar Bank, a subsidiary of U.S. Bank, and U.S. Bank presented the check to Bank of America the same day. (Exhibit A 44-46, Exhibit B). The signature of the Toys 'R Us representative had been fraudulently endorsed. ("Ex. D").

Thereafter, Toys 'R Us assigned all of its rights to the check to Calex. (Exhibit F) Calex instituted the instant action against Bank of America on May 2, 3003 to recover the proceeds. On July 21, 2004, Calex moved to amend the Complaint to add claims against Lumbermen and U.S. Bank. On July 27, 2004, this Court granted the Motion to Amend and Calex filed the Amended Complaint on August 2, 2004. The Amended Complaint advances three Counts. Counts I and II are conversion claims against U.S. Bank and Bank of America, alleging that the acceptance of the check without indorsement of Toys 'R Us constituted

2

conversion, negligence, and a breach of warranties of presentment and transfer. Count III maintains that Lumbermen negligently issued the check to two corporate payees.

**II.     Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. Calex is a Pennsylvania corporation with a principal place of business in Pittston, Pennsylvania. U.S. Bank is a national banking institution with its registered address in Minneapolis, Minnesota. Bank of America is a national banking institution with its registered address in Concord, California. Lumbermen is an Illinois Corporation with its principle place of business in Long Grove, Illinois. Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**III.    Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

3

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**IV.   Discussion**

U.S. Bank and Lumbermen each argue that it is entitled to summary judgment. We will consider each motion seperately.

**A.   U.S. Bank Motion**

U.S. Bank argues that we should enter summary judgment because Calex's claim is barred by the statute of limitations. It asserts that Calex's claim accrued on February 22, 2001, when the check was negotiated, and the three year statute of limitations expired on

February 22, 2004, five months before Calex joined U.S. Bank as a defendant in this case. Pennsylvania law applies a three year statute of limitations to Calex's claim for conversion and breach of warranty.  13 PA. CONS. STAT. ANN. § 3118(g).

> (g) Conversion, breach of warranty, and other Division 3 actions. - - Unless governed by other law regarding claims for indemnity or contribution, an action:
> (1) for conversion of an instrument, for money had and received or like action based on conversion; (2) for breach of warranty; or
> (3) to enforce an obligation, duty or right arising under this division and not governed by this section; must be commenced within three years after the cause of action accrues.

13 PA. CONS. STAT. ANN. § 3118(g).

Calex urges that we apply the discovery rule and toll the statute of limitations until June 7, 2002, when it became aware that the check had been fraudulently endorsed.  We find the discovery rule inapplicable to this case.  "[T]he discovery rule does not apply to toll the statute of limitations for claims for conversion of negotiable instruments.  In the absence of fraudulent concealment, such claims accrue and the statute begins to run when the instrument is negotiated."  Hollywood v. First Nat'l Bank of Palmerton, 859 A.2d 472, 482 (Pa. Super. Ct. 2004) (citations omitted).

In Menichini v. Grant, 995 F.2d 1224 (3d Cir. 1993), the court predicted that, if faced with the issue, the Pennsylvania Supreme Court would mechanically apply the statute of limitations to claims for conversion of negotiable instruments and would refuse to apply the discovery rule.  There, the plaintiff was the sole owner of Best Legal Services, which employed the defendant as a bookkeeper and office manager.  Id. at 1227.  The defendant

5

abused her position to forge the plaintiff's signature on company checks, deposit the checks in her personal accounts, and alter the company books to conceal the defalcation. Id. The defendant brought suit after the expiration of the statute of limitations, arguing that the plaintiff should not have the benefit of the statute of limitations because her fraudulent behavior prevented the discovery of her forgery. Id. at 1228-29. The court rejected this argument, and held that the discovery rule did not apply because the rule is "inimical to UCC [Uniform Commercial Code] policies of finality and negotiability." Id. at 1230.

> The utility of negotiable instruments lies in their ability to be readily accepted by creditors as payment for indebtedness. Checks must be transferrable. Consequently, "in structuring the law of checks we . . . seek to enhance the negotiability of the commercial paper so that it may play its role as a money substitute."

Id. at 1230-31

The Pennsylvania Superior Court has since joined the Third Circuit in declining to apply the discovery rule to claims for conversion of negotiable instruments. Hollywood, 859 A.2d at 482 (citations omitted). In Hollywood, the estate of Cletus J. Hollywood sought to recover financial losses sustained when Hollywood's daughter, Mary Ann Anderson, converted his assets while he was under her care and suffering from dementia and Alzheimer's disease. Id. at 473-74. Anderson depleted Hollywood's assets by fraudulently signing checks drawn from his accounts with the defendant banks. Id. Five years after the last of the subject checks had been paid, Hollywood's estate filed suit against the banks claiming negligent conversion under UCC § 3-420 and unauthorized payment under UCC §

6

4-406.  Id. at 474.  The court found the claims barred by the statute of limitations and declined to apply the discovery rule even though Hollywood was mentally incapacitated and unable to discover the fraud.  Id.  It noted that the majority of courts mechanically apply the statute of limitations in the commercial arena, and found Menicheni persuasive.  Id. at 480-82.  The court considered the equities in favor of applying the discovery rule, but found "the discovery rule 'inimical to UCC policies of [uniformity], finality, and negotiability.'"  Id. (quoting Menichini, 995 F.2d at 1231).  When a negotiable instrument is converted, the tort is complete "when the instrument is negotiated, regardless of the plaintiff's ignorance of the conversion."  Hollywood, 859 A.2d at 482.  Thus, the discovery rule is inapplicable because the "need for expedition in commercial transactions is best achieved by safeguarding negotiability and finality of negotiable instruments and assuring uniformity of applicable laws across state boundary lines."  Id. at 482.

Plaintiff argues that Hollywood does not control our present inquiry because Hollywood relied on Menichini, which addressed a claim for violation of 13 PA. CONS. STAT. ANN. § 3419, whereas Calex's claim is grounded in 13 PA. CONS. STAT. ANN. § 3420.  We find the difference immaterial.  Hollywood addressed claims pursuant to 13 PA. CONS. STAT. ANN. § 3420, the precise section on which Calex grounds its claims, and found that the discovery rule does not apply.  Furthermore, to the extent that Calex's count includes claims other than the conversion claim, we find that the policies of uniformity, finality, and negotiability are implicated, the Hollywood reasoning applies, and we will mechanically

7

apply the statute of limitations.

Calex also argues that we should decline to rely on the <u>Menichini</u> court's prediction that the Pennsylvania Supreme Court will mechanically apply the statute of limitations because <u>Menichini</u> is a Third Circuit opinion, and Pennsylvania law controls.  Instead, Calex argues that we should rely on the reasoning of <u>Peaceman v. PNC Bank</u>, 32 Pa. D. & C. 4th 369 (1996), and apply the discovery rule because the delay was the result of "blameless ignorance."  We will not apply the <u>Peaceman</u> rule because <u>Hollywood</u> explicitly rejected reliance on <u>Peaceman</u> in this context.  <u>Hollywood</u>, 859 A.2d at 484.  Therefore, we find that the discovery rule does not toll the statute of limitations on Count I, and we will therefore grant summary judgment for U.S. Bank on this claim.[1]

**B.    Lumbermen's Motion**

Lumbermen argues that we should grant summary judgment on Calex's negligence claim because Calex cannot establish a duty or causation.  In order to impose liability, Calex must establish:

> the existence of a duty or obligation recognized by law; a failure on the part of the defendant to conform to that duty, or a breach thereof; a causal connection between the defendant's breach and the resulting injury; and actual loss or damage suffered by the complainant.

<u>T.A. v. Allen</u>, 669 A.2d 360, 362 (Pa. Super. Ct. 1995) (quoting <u>Orner v. Mallick</u>, 527 A.2d 521, 523 (Pa. 1987)).

---

[1] U.S. Bank also argues that we should dismiss Count I because it made no warranties to Calex.  As we will dismiss Count I for failure to comply with the statute of limitations, any discussion of U.S. Bank's warranty arguments is moot.

Calex argues that Lumbermen owed a duty to pay Toys 'R Us that it breached by issuing the check payable to both Toys 'R Us and Owners, and this breach caused the harm. We find that Lumbermen owed no common law duty to Toys 'R Us, and therefore we will grant summary judgment. Furthermore, even if Lumbermen breached a duty, the forgery was the superseding cause of the harm alleged.

**1.      Duty**

Calex argues that Lumbermen owed a duty because Toys 'R Us was a payee under the endorsement to Owners' insurance policy. We find that this duty sounds in contract, and cannot serve as the basis for Calex's negligence cause of action.

In Pennsylvania, tort claims and breach of contract claims are conceptually distinct. Etoll, Inc., v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (citing Bash v. Bell Tel. Co., 601 A.2d 825 (Pa. Super. Ct. 1992)). "[A] claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)).

Where a party claims that an insurance company improperly paid insurance proceeds, the action lies in contract, not tort. Ins. Adjustment Bureau v. Allstate Ins. Co., 860 A.2d 1038, 1044 (Pa. Super. Ct. 2004). In Ins. Adjustment Bureau, after the insureds' residence was damaged, they hired the plaintiff, a public adjuster, to assist in handling the loss. Id. at 1040. The insureds assigned to the plaintiff their monies due from the insurance company.

9

Id. The insurer issued a settlement check to the insured, but did not include the plaintiff as a payee on the check. Id.

The plaintiff filed a conversion claim against the insurer to recover the monies owed under the assignment. Id. The court sustained a demurrer to the claim, noting, "Pennsylvania law [] has not allowed conversion claims to be based on a refusal to pay insurance policy proceeds." Id. at 1040. The court reasoned, "the essence of [the plaintiff's] claim is a breach of contract action. . . .The contract claim is not collateral to the alleged wrongdoing; rather, it lies at the center of [the plaintiff's] claims." Id.

Similarly, Calex argues that the endorsement was the sole source of Lumbermen's duty, and thus its claim lies in contract. The Complaint, as well as Calex's brief, clearly set forth a negligence claim. Calex has identified no duty imposed by tort law, and therefore we will grant summary judgment because Calex cannot establish a genuine issue of material fact that Lumbermen owed a duty.[2]

---

[2] Although Calex has not identified any tort law duty, it does cite case law providing that a defendant owes a duty to prevent foreseeable harm resulting from its actions. We find that the forgery was not a foreseeable event and Calex had no duty to prevent the forgery. "As a general rule, a person is not liable for the criminal conduct of another in the absence of a special relationship imposing a pre-existing duty." Elbasher v. Simco Sales Service of Pennsylvania, 657 A.2d 983, 984 (Pa. Super. Ct. 1995) (citing Feld v. Merriam, 486 A.2d 742, 746 (Pa. 1984)). In T.A. v. Allen, 669 A.2d 360 (Pa. Super. Ct. 1995), the court analyzed whether a woman had a duty to protect her husband's grandchildren from a previous marriage from his pedophilic behavior. The court recognized that absent a special relationship between the woman and her husband or the woman and her husband's grandchildren, she had no duty to protect them. Id. at 362 (citing RESTATEMENT (SECOND) OF TORTS § 315). The court found no special relationship, and thus no duty. Id. at 363. It reasoned that the woman was not the children's grandmother, they were not in her custody, she assumed no responsibility for them, and she "was not present when the wrong was done and had in no way aided or abetted, counselled [sic] or encouraged its commission." Id. (citations omitted); see also Roche v. Ugly Duckling, 879 A.2d 785, 794-95 (Pa. Super. Ct. 2005) (finding no duty of car

### 2.     **Superseding Cause**

Furthermore, we find that even assuming that Lumbermen owed a duty, the forgery was the superseding cause of the harm. Pennsylvania courts have adopted Restatement (Second) of Torts § 448 to address superseding causes. <u>Ford v. Jeffries</u>, 379 A.2d 111, 115 (Pa. 1977); <u>Bryant v. Girard Bank</u>, 57 A.2d 968, 974 (Pa. Super. Ct. 1986).

> The act of a third person in committing an intentional tort of crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or a crime, unless the actor at the time of his negligent conduct realized or should have realized that likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

RESTATEMENT (SECOND) OF TORTS § 448.

Calex has presented no evidence that Lumbermen realized or should have realized that its actions created the likelihood of forgery or that a third party would avail itself of the opportunity. In <u>Bryant v. Girard Bank</u>, 317 A.2d 968 (Pa. Super. Ct. 1986), the court analyzed a situation where forgery was foreseeable for the purposes of Restatement § 448. Bradley and Callie Bryant were a married couple who jointly insured their home. <u>Id.</u> at 971. After their home was destroyed by a fire, they entered into a contract with Young, a public adjustment company. <u>Id.</u> The insurance company issued a check for the loss payable to the

---

owner and garage owner to plaintiff when juveniles stole a car and recklessly collided with the plaintiff because the theft was not foreseeable). Similarly, Lumbermen in no way abetted, counseled, or encouraged the forgery. Calex has established no facts indicating that Lumbermen knew or should have known that a third party would forge the Toys 'R Us representative's signature. Therefore, we find no common law duty to prevent the forgery.

11

Bryants jointly and to Young. Id.  Thereafter, Mrs. Bryant's attorney contacted the vice president of Young to inform him that the Bryants had a domestic dispute. Id.  The attorney instructed Young that he and Mrs. Bryant were to be present when she signed her name to the check, and that Young was not to release the drafts unless Mrs. Bryant or her attorney was present. Id.  Following this warning, a representative of Mr. Bryant arrived at Young's office with two of the drafts, which the vice president signed. Id. at 971-72.  Thereafter, Mr. Bryant forged Mrs. Bryant's name on the back of each draft, and disappeared with the proceeds. Id. at 972.  Mrs. Bryant filed suit against Young, alleging that it breached a fiduciary duty by endorsing and forwarding the drafts despite advance notice that Mr. Bryant might act adversely to her. Id.  Young argued that Mr. Bryant's behavior was a superseding cause of the harm to Mrs. Bryant. Id. at 973.  The court rejected this argument, reasoning that the evidence of the warning to Young created a jury question as to whether Young should have realized that Bryant would avail himself of the opportunity to commit a tort or a crime. Id. at 974.

In contrast, Calex has presented no evidence that Lumbermen had any indication that a third party would avail itself of the opportunity to commit forgery.  Thus, under Restatement (Second) § 448, the forgery was a superseding cause of the harm.  Therefore, we find that even if Lumbermen owed a duty, Calex failed to create a genuine issue of material fact that Lumbermen's actions caused the alleged harm, and we will grant summary judgment.

**IV.     Conclusion**

For the reasons expressed above, we will grant summary judgment for U.S. Bank on Calex's claim because it is barred by the statute of limitations. We will grant summary judgment for Lumbermen on Calex's negligence claim because it sounds in contract, Lumbermen owed no duty imposed by tort law, and even if Lumbermen did owe a duty, the forgery was the superseding cause of the alleged harm.  Calex's sole remaining claim is Count II against Bank of America.  Even though Calex has no remaining claims against them, Lumbermen and US Bank will remain in this case as defendants of pending cross claims.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CALEX EXPRESS, INC.,** | : | No. 3:03cv886 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **BANK OF AMERICA, US BANK NATIONAL ASSOCIATION, and LUMBERMEN'S MUTUAL INSURANCE CO.,** | : | |
| Defendants | : | |
| v. | : | |
| | : | |
| **OWNER'S EXPRESS GROUP** | : | |
| Third Party Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **ORDER**

**AND NOW**, to wit, this 22nd day of November 2005, it is hereby **ORDERED** that Defendant U.S. Bank National Association's Motion for Summary Judgment (Doc. 54) and Defendant Lumbermen's Mutual Insurance Company's Motion for Summary Judgment (Doc. 57) are hereby **GRANTED**.

                                      **BY THE COURT:**

                                      **s/ James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**